IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**DAVID TYLER GONZALEZ,**                                             **PLAINTIFF**

v.                                            **CIVIL ACTION NO. 4:14-CV-104-SAA**

**CAROLYN W. COLVIN,**
**COMMISSIONER OF SOCIAL SECURITY**                                     **DEFENDANT**

## MEMORANDUM OPINION

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's decision denying plaintiff David Tyler Gonzalez's application for a period of disability (POD) and supplemental security income (SSI) under Title XVI of the Social Security Act. Docket 9. The court has jurisdiction over plaintiff's claim under 28 U.S.C. § 1331. Because both parties have consented to have a magistrate judge conduct all proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

### I. FACTS

The plaintiff's mother filed this action on behalf of her son. The plaintiff was born January 8, 2005. His mother filed his initial application for child's Title XVI benefits on January 30, 2012, when he was seven years old, citing attention deficit disorder ("ADHD") and behavioral issues. Docket 9, p. 56, 70. The application alleged that the plaintiff's disability began around January 1, 2008. Docket 9, p. 70.

The agency administratively denied the application initially on March 23, 2012 (*id.* at 42) and upon reconsideration on April 6, 2012, finding the child to be somewhat limited but not so severely limited to qualify for disability benefits. *Id.* at 42, 49. Plaintiff then requested a hearing, which an Administrative Law Judge ("ALJ") held on February 13, 2013. *Id.* at 30. The

ALJ issued an unfavorable decision on March 11, 2013 (*Id.* at 12-26), and the Appeals Council denied plaintiff's request for a review on May 29, 2014, *Id.* at 4-6. Plaintiff's mother proceeded without legal representation throughout the application and appeals process until she sought judicial review of the Commissioner's decision.

After securing legal counsel, the plaintiff timely filed the instant appeal from the decision. The plaintiff contends the ALJ erred in (i) assessing the plaintiff's six domains, (ii) allowing the plaintiff's mother to proceed without an attorney, and (iii) not considering evidence from other sources. Docket 15.

## II. STANDARD OF REVIEW

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley*, 197 F.3d at 196, citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). In making that determination, the court has the responsibility to scrutinize the entire record. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds the evidence leans against the Commissioner's decision. *See Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *see also Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). In the Fifth Circuit, substantial evidence, "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988), quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other

side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the ALJ's conclusions. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crowley*, 197 F.3d at 197. "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson*, 402 U.S. at 390.

However, this standard of review is not a rubber stamp for the Commissioner's decision. Satisfying the standard involves more than a basic search for evidence supporting the findings of the Commissioner. The court must scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the ALJ's findings. *Austin v. Shalala*, 994 F.2d at 1174, citing *Tome v. Schweiker*, 724 F.2d 711, 713 (8th Cir.1984); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *see also Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir.1984).

### III. DISCUSSION

The ALJ made his determination under the rules adopted by the Social Security Administration in accordance with the changes to children's disability benefits in the Personal Responsibility and Work Opportunity Reconciliation Act. *See* 42 U.S.C. § 1382c. To be considered disabled under the Act a child must have a "physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). To evaluate the ALJ's determination, this court finds it necessary to outline the process of determining children's disability under these rules.

In assessing a child's alleged disability, the Commissioner, through an ALJ, must work through a three-step sequential evaluation process used specifically to determine whether a child meets the disability criteria. *See* 20 C.F.R. § 416.924 (2004). The burden rests upon the plaintiff to prove disability at all stages of the proceedings. First, the ALJ determines whether the child is working. 20 C.F.R. § 416.924(b) (2006). Second, the ALJ decides whether the child has a medically determinable "severe" impairment or combination of impairments. 20 C.F.R. § 416.924(c). Finally, at step three, for a finding of disabled, the ALJ must conclude the child's impairment or combination of impairments meets, medically equals or functionally equals the severity of an impairment listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02. 20 C.F.R. §§ 416.924(d) & 416.925 (2006). If plaintiff's impairment is severe but does not meet or equal in severity of a Listing, the ALJ must then undertake a Functional Equivalence Analysis ("FEA") to determine whether the impairment is "functionally equal in severity to a listed impairment." 20 C.F.R. § 416.926a(a).

An FEA requires the fact-finder to perform analysis and reach findings that deal in six functional *domains*: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i-vi)(2007). "An impairment(s) causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment in the listings, or if it functionally equals the listings." 20 C.F.R. § 416.924(d)(2006). A medically determinable impairment or combination of impairments functionally equals a listed impairment if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. *See* 20 C.F.R. § 416.926a (2007).

A "marked" limitation in a domain means it "interferes *seriously* with [the] ability to independently initiate, sustain, or complete activities." *See* 20 C.F.R. § 416.926a(e)(2)(i) (emphasis added). A "marked" limitation also means the limitation is "more than moderate" but "less than extreme." *See* 20 C.F.R. § 416.926a(e)(2)(i). On the other hand, an "extreme" limitation is one that "interferes *very seriously* with [the] ability to independently initiate, sustain, or complete activities." *See* 20 C.F.R. § 416.926a(e)(3)(i) (emphasis added). While "extreme" limitation is the rating given to the worst limitations, is does not necessarily require a total lack or loss of an ability to function. *See* 20 C.F.R. § 416.926a(e)(3)(i). When deciding whether a child has a marked or extreme limitation, the ALJ must consider the child's functional limitations in all areas, including their interactive and cumulative effects, then make a determination as to whether the child is disabled under the Act. *See* 20 C.F.R. § 416.926a(a).

In this instance, the court finds the ALJ's assessment of the plaintiff's disability was almost wholly superficial, composed primarily of boilerplate language and, therefore, failed to meet the substantial evidence standard or comply in upholding the proper legal standards. Throughout his evaluation, the ALJ appears to have done little more than what is, at best, a clearly insufficient analysis. While the court recognizes the difficult job ALJs are charged with, this type of assessment is insufficient in every regard, particularly considering the fact that the plaintiff here is a child and the plaintiff's mother proceeded pro se.

To begin the discussion regarding the ALJ's insufficient analysis, it is at least worth noting that the ALJ hearing itself lasted a total of fifteen minutes. Docket 9, p. 32, 39. Even though the amount of time spent in a hearing is not necessarily determinative, in this instance that fact exemplifies the ALJ having simply gone through the motions during the entire process. The pro forma nature of the hearing is even more disturbing because of the plaintiff's *pro se*

status at that point; it should be common sense to an ALJ that he should be more diligent, not less, in those instances. *See, e.g., McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010). Based upon the testimony provided in that hearing and supposedly the entirety of the record presented, the ALJ determined that the plaintiff's ADHD, oppositional defiant disorder, and mood disorders qualified as severe impairments. *Id.* at 18. However, the ALJ found that no impairment or combination of impairments fulfilled the criteria of any listed impairment. *Id.* at 18-21. In assessing whether the plaintiff had any impairment or combination of impairments that met a Listing, the ALJ is required to consider the "listings" in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ stated in his decision that he considered Listings 112.04 (mood disorders) and 112.11 (ADHD). *Id.* at 19.

It is well established in the Fifth Circuit that an "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000), citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984). However, inconsistency with that legal standard is a theme evident throughout the ALJ's assessment. To reach this particular conclusion, the ALJ's explanation referred to medical records dating from February 8, 2010 until February 1, 2011, when the plaintiff was between five and six years old. Docket 9, p. 18-19. At the time of the ALJ hearing, the plaintiff was eight years old. Docket 9, p. 33. The idea that the ALJ was able to accurately assess the severity of an eight-year old child's disability based solely on records produced almost a fourth of the child's life ago must, at a minimum, raises questions as to the thoroughness of that assessment. Those questions gain greater force where, as here, the record contained various other medical records which continued in time well beyond the initial application date, and the ALJ did not indicate that he considered them at all. *See* Docket 9, Exhibit 2F, 3F, 4F, 5F, 6F, 7F.

Further, while there is no indication the ALJ considered the medical records beyond early 2011, the court also has questions about whether the ALJ really even considered those he specifically claimed to have relied upon to make his determinations. For example, in the paragraph following his finding that the plaintiff's symptoms were "not entirely credible for the reasons stated below," the ALJ relied upon treatment records from Dr. Harris made in 2010. Docket 9, p. 20. The ALJ noted, "[r]ecords dated December 22, 2010, reflected that the claimant's mood and affect were happy." Docket 9, p. 20. The record does in fact "[h]appy/Interactive//Normal for age" in the Mood and Affect area of among twenty-nine other visual examination points, but a simple review of Dr. Harris's record convinces the court that reliance on that isolated statement to determine the plaintiff's credibility with regard to his alleged disabilities is suspect at best.

The ALJ relied on an isolated notation on a 2010 treatment record to pick and choose information that supported his conclusion. Unlike the many times later in the child's medical treatment history, none of which the ALJ chose to refer, the plaintiff was not taken to the doctor on that particular instance because of issues related to his alleged disabilities. Instead, he was taken to the doctor because was exhibiting, "fever, sore throat, cough, [and] cold sore[s] on lips." Docket 9, p. 205. Even if one were to overlook the obvious inconsistency created in claiming a five year old child was supposedly "happy" on the day he was being treated for fever and exhibiting flu-like symptoms, to go further and rely on that notation as an indication that the plaintiff lacked credibility defies common sense and is not substantially justified. While it is true that the criteria for the listings are demanding and stringent, *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994), the record evidence in this case firmly establishes that the ALJ did not consider the entire record.

The ALJ's assessment of the issue above was deficient. As if that deficiency were not enough to justify a remand in and of itself -- which it is -- the previously mentioned analysis was actually superior to the almost total lack of analysis performed throughout the remainder of the ALJ's decision. Docket 9, p. 21-26.

After determining that the severity of the plaintiff's impairments or combination of impairments did not meet or equal a Listing, the ALJ was then required to perform an FEA to determine whether the child's impairments were functionally equivalent to a listed impairment. *See* 20 C.F.R. § 416.926a(a). In performing that analysis, the ALJ found the plaintiff had "less than marked" limitations in the "acquiring and using information," "attending and completing tasks," "interacting and relating with others," and "health and physical well-being" domains and no limitations in the other domains. *Id.* Based on those findings, the ALJ determined that the plaintiff was not disabled and did not qualify for benefits. Docket 9, p. 26.

The court acknowledges that the Social Security Administration's preparation of and distribution of templates to help ALJs cover all bases during their claim evaluations has been very helpful, both to ALJs and to reviewing courts. However, over-reliance upon those templates can lead to exactly the situation which the court sees in this case – long quotations of the template language and regulations, followed by inexcusably brief, rote, unsupported conclusions with insufficient reference to record support that would permit the court to find that the decision is supported by the record as a whole and that the regulations themselves were properly applied. Where an ALJ merely uses boilerplate or template language to state summary conclusions based on cherry-picked evidence that supports only his decision, that decision is not supported by substantial evidence. *See Burnett v. Commissioner*, 220 F.3d 112, 119-20 (3rd Cir. 2000). *See also Loza v. Apfel*, 219 F.3d at 393; *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.

1996).  As the *Clifton* court stated, "[s]uch a bare conclusion is beyond meaningful judicial review." 79 F.3d at 1009.  The portion of the ALJ's report that considers the six domains is roughly five pages long.  Docket 9, p. 21-25.  However, although the volume of information is not determinative, even a casual observer would notice that each domain's analysis is eerily similar.  For instance, each domain's analysis is exactly four paragraphs.  *Id.*  Further, with the exception of the third paragraph in the "Health and Physical Well-Being" domain, the first three paragraphs in all domains consists entirely of boilerplate , or template, language.  *Id.*  Not only do these paragraphs contain absolutely no analysis regarding the plaintiff but, none of the paragraphs contain any information regarding the plaintiff whatsoever.

When the boilerplate language is removed, the lack of actual analysis is obvious.  For example, in the domain of "Acquiring and Using Information," the ALJ wrote,

> [t]he claimant has less than marked limitation in acquiring and using information.  The claimant has repeated kindergarten.  The claimant's mother testified that it takes him a little longer to read and comprehend.  The claimant testified at the hearing that he was eight years old and in the fourth grade.  The mother testified that the claimant has an "A" in math.

Docket 9, p. 21. Even if one were to take the analysis contained at face value, which the court does not do, the lack of evidence is staggering, and the same is true for the analysis of all the domains.  As the Tenth Circuit has addressed many times, "the use of '[s]tandard boilerplate language will not suffice.'. . . Such boilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered" in making a determination.  *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004).  Not only did the ALJ provide little more than a cursory domain analysis, but the information within that analysis was cherry-picked to reach the ALJ's predetermined conclusion, and he made no effort whatsoever to explain why

he chose to discount the relatively large amount of record evidence from doctors, schools, neighbors and relatives which supports plaintiff's claim.

Even if the court disregards that the ALJ incorrectly reported the plaintiff's testimony regarding his grade level, the remainder of the analysis is similarly picked over. The ALJ noted that the, "mother testified the claimant has an 'A' in math." Docket 9, p. 21. That is true, but the plaintiff's mother's testimony continued, "[h]e's got an A in math. His reading and his spelling, he's failing. And he has a hard time focusing on words and it kind of – takes him a little longer to read things and then he has to go back and reread them to understand them." Docket 9, p. 34. Similarly, the ALJ noted in the "Interacting and Relating with Others" domain that the plaintiff testified that he, "plays with friends at school." Docket 9, p. 23. In actuality, when asked whether he plays with any of his friends the plaintiff said, "[w]ell, I really don't have any friends. But, some of the days I do." Docket 9, p. 23.

The court declines to uphold this kind of superficial analysis propped up by nothing more than an abundance of boilerplate language and cherry-picked testimony. Not only did the ALJ's analysis fail to meet the proper standards, but the ALJ never went so far as to even order a consultative examination of the plaintiff. These insufficiencies, coupled with the fact that the plaintiff's mother tried to assert to the Appeals Council that her son may have been diagnosed with Asperger's Syndrome soon after the ALJ hearing, make clear that the issue requires further review.

## IV.    CONCLUSION

The court has painstakingly reviewed the entire record, and has found that there was not substantial evidence for the ALJ's decision. The ALJ relied on isolated snippets of information from older records to support his conclusion while ignoring more recent records. His analysis of

the six domains was built entirely on template language and cherry picked testimony. These failures to provide the plaintiff with an adequate review resulted in his decision not being supported by substantial evidence and improper application of legal standards. Further, more meaningful review is necessary. This case is remanded for further evaluation consistent with this opinion. A final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this the 31st day of March, 2015.

/s/ S. Allan Alexander<br>
UNITED STATES MAGISTRATE JUDGE